JAMES C. SHAH (SBN 260435)
**SHEPHERD, FINKELMAN, MILLER AND SHAH, LLP**
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (856) 858-1770
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIFFIN CHERRY HILL LLC** and **TIFFIN MOUNT AIRY, LLC,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CAVIAR, INC.**, d/b/a **TRY CAVIAR**,<br><br>Defendant. | Case Number: _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, Tiffin Cherry Hill LLC ("Tiffin Cherry Hill") and Tiffin Mount Airy, LLC ("Tiffin Mount Airy") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this class action on behalf of themselves and a proposed class of all others similarly situated (the "Class"), against Defendant, Caviar, Inc., d/b/a Try Caviar ("Caviar"). Plaintiffs make the following allegations based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon the investigation undertaken by their counsel of the contracts at issue, public records, and online postings and articles, among other materials.

## I. INTRODUCTION

1. Caviar is a technology-based company that offers a "premium" online ordering platform to connect restaurants, customers, and food-delivery drivers.

2. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3. When a customer places an order through Caviar's platform, the customer pays Caviar. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ Caviar possesses and controls all money paid by a customer for his or her order until Caviar transfers the remainder to the Restaurant. ████████████████████████████████████████████████████████████

4. Since at least 2014, Caviar ████████████████████████████████████████████ in excess of the contracted rate. Caviar has taken advantage of the tens of thousands of Restaurants using its services, wrongfully withholding money paid to it by customers that should have been paid to those Restaurants under the terms of the Restaurants' contracts with Caviar.

5. Plaintiffs seek to remedy these harms and prevent their future occurrence, on behalf of themselves and other Restaurants that Caviar wrongfully withheld ████████ ██████████████████████████. Plaintiffs assert claims for Caviar's (1) breach of contract; (2) conversion; and (3) violations of the unfair, fraudulent and unlawful prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

6. Plaintiffs seek to recover, for themselves and a proposed class of all others similarly situated, actual and statutory damages, injunctive relief, restitution, disgorgement, punitive damages, costs, reasonable attorneys' fees, and any other available relief.

## II. JURISDICTION AND VENUE

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §

1332(d)(2) because: (i) there are 100 or more members of the Class; (ii) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (iii) at least one member of the Class is a citizen of a state different from Caviar.

8. This Court has personal jurisdiction over Caviar because Caviar maintains its principal place of business in California and is authorized to do business and regularly conducts business throughout the United States, including in California.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, Caviar is authorized to conduct business in this District, and Caviar regularly conducts and transacts business in this District and is therefore subject to personal jurisdiction in this District.

### III. THE PARTIES

10. Tiffin Cherry Hill is a New Jersey limited liability company with its principal place of business located at 1892 Marlton Pike East, Cherry Hill, New Jersey. Tiffin Cherry Hill, thus, is a citizen of New Jersey. Tiffin Cherry Hill owns and operates a restaurant, Tiffin Indian Cuisine, at that location. Tiffin Cherry Hill has been injured as a result of Caviar's conduct described herein.

11. Tiffin Mount Airy is a Pennsylvania limited liability company with its principal place of business located at 7105 Emlen Street, Philadelphia, Pennsylvania. Tiffin Mount Airy, thus, is a citizen of Pennsylvania. Tiffin Mount Airy owns and operates a restaurant, Tiffin Indian Cuisine, at that location. Tiffin Mount Airy was injured as a result of Caviar's conduct described herein.

12. Caviar is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1455 Market Street, Suite 600, San Francisco, California. Caviar, thus, is a citizen of California and Delaware.

### IV. FACTUAL BACKGROUND

**A. Caviar's Business Model and Services to Restaurants**

13. Caviar represents itself as "an all-in-one food ordering platform that connects

diners with the best local and independent restaurants, via convenient delivery, pickup, or catering."[1] On its blog, Caviar represents that it "truly understands the art of food service" and that its restaurants "experience unparalleled service, increased sales, and greater efficiency."[2]

14. Caviar is a technology-based company that offers an online ordering platform, accessible either through its website or app, from which customers may order food and beverages from Restaurants for pick-up or delivery to the customer.

15. In connection with offering its platform to customers, Caviar contracts with Restaurants, whose food and beverages customers can then order through Caviar. Caviar calls this contract the "Delivery Service Agreement." ███████████████████████ ███████████████████████████████████████████████████████ ██ Upon information and belief, the Delivery Service Agreements between Caviar and the Restaurants are all substantially similar to one another.

16. Caviar characterizes its relationship with Restaurants as a "partner[ship]": "Your food, our delivery."[3] Caviar's online platform allows Restaurants to receive orders, as well as to update their "menu[s], 86 items, push back orders in real time, and even turn off new orders" if a restaurant is "slammed." Caviar claims that its online platform allows Restaurants to "feed the millions of diners nationwide who turn to us when they're hungry—from families looking for convenient restaurant delivery, to individuals wanting to pick up a quick meal, to companies catering a team lunch."[4]

17. Caviar separately contracts with independent-contractor delivery drivers who deliver the food and beverages ordered by customers and who are generally not associated with any Restaurant. Caviar "offer[s] full-service delivery in major U.S. cities," using "local couriers." "Couriers in the Caviar network deliver orders to . . . diners, all with real-time order

---

[1] "About Caviar," *Caviar* (accessed Nov. 25, 2019, 8:38 AM), https://www.trycaviar.com/about-us.
[2] Caviar, "You Prepare the Food, We Deliver It," *Medium* (May 16, 2016), https://medium.com/caviar/caviar-for-restaurants-e5b064f275a8.
[3] *Id*.
[4] "Caviar for Restaurants," *Caviar* (accessed Nov. 25, 2019, 9:02 AM), https://info.trycaviar.com/us/en/for-restaurants.

updates, and GPS order tracking." Caviar also allows customers to place food orders for pick up from Restaurants using its online platform.[5]

18. In August 2014, Caviar was acquired by Square, Inc. ("Square"). By acquiring Caviar, Square claimed that it "deepen[ed] its commitment to providing independent sellers with services that make it easier for them to grow their business."[6]

19. In August 2019, Square sold Caviar to another online-based food delivery company, DoorDash Inc. ("DoorDash"). According to DoorDash's blog, "Caviar is a merchant-first company, working hard to help local restaurants attract more customers, grow their sales and expand their reach."[7]

20. DoorDash characterized Caviar as a "premium brand built on rich relationships with premium restaurants. Adding these merchants to our platform will complement DoorDash's merchant selection, ensuring we can cater to everyone and every occasion."[8]

B. **The Delivery Service Agreement**

21. The Delivery Service Agreement 

---

[5] *Id.*
[6] "Square Acquires Caviar," *Square* (Aug. 4, 2014), https://squareup.com/us/en/press/square-acquires-caviar.
[7] Tony Xu, "Combining Two Great Companies: DoorDash to Acquire Caviar," *DoorDash* (Aug. 1, 2019), https://blog.doordash.com/combining-two-great-companies-doordash-to-acquire-caviar-9c427721f775.
[8] *Id.*

22. In exchange for the services, ███████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

23. In other words, under the terms of the Delivery Service Agreement, when a customer places an order and pays Caviar, ████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████

24. The Delivery Service Agreement further obligates Caviar to ████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█

C. **Caviar Overcharges Restaurants**

25. By virtue of Caviar collecting customers' payment through its online ordering platform, it controls and possesses the Restaurants' funds until such time as ████████
████████████████████████████████████████████████

26. However, since at least the time of Caviar's acquisition by Square in 2014, ████

27. Caviar deliberately conceals its over-withholding from Restaurants by omitting the amount of the Total Price being remitted to the Restaurants, instead non-transparently reporting that amount only in combination with the sales tax collected and paid to the Restaurants, misleading the Restaurants to believe they are receiving a greater portion of the Total Price than they really are.

28. For example, a customer placed an order on July 9, 2019 for which Caviar collected $58.00 for the customer's food (i.e., the Total Price). In accordance with New Jersey's 6.625% sales tax, Caviar collected an additional $3.84 in sales tax. Per the terms of the Delivery Service Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. However, Caviar instead withheld ▮▮▮ and paid Tiffin Cherry Hill only ▮▮▮ of the Total Price plus the $3.84 in sales tax collected, for a total of ▮▮▮. Caviar concealed its underpayment by reporting Tiffin Cherry Hill's portion of the Total Price only in combination with the sales tax collected in all communications to Tiffin Cherry Hill. A screenshot of an email from Caviar reporting this order can be seen below:

**Payout to Tiffin - Cherry Hill: $49.47**
Access your past performance reports and sales data online.

| | Count | Food Price | Tax | Restaurant Portion | Caviar Portion |
|---|---|---|---|---|---|
| Delivery Orders | 1 | $58.00 | $3.84 | ▮▮▮ | ▮▮▮ |
| Order Adjustments | 0 | | $0.00 | ▮▮▮ | ▮▮▮ |
| Total | | | $3.84 | ▮▮▮ | ▮▮▮ |

29. Further examples of Caviar's over-withholding of the Revenue Share can be seen in two orders placed to Tiffin Cherry Hill on November 1, 2019, as shown below in a screenshot from Tiffin Cherry Hill's dashboard on Caviar's website:

| | Count | Tax | Paid Out |
|---|---|---|---|
| Delivery Orders | 18 | $58.79 | ▇ |
| Pickup Orders | 0 | $0.00 | |
| Adjustments | 1 | -$0.53 | |
| Totals | 19 | $58.26 | |

**Delivery Orders**

| ID | Pickup Time | Food Pri... | Tax | Caviar Portion | Restaurant Portion |
|---|---|---|---|---|---|
| SNJ-TIFFINCH-20484 | 2019-11-01 06:19:20 PM | $66.00 | $4.37 | ▇ | ▇ |
| SNJ-TIFFINCH-81390 | 2019-11-01 07:53:55 PM | $67.50 | $4.47 | | |

As can be seen, in the order with ID SNJ-TIFFINCH-20484, the Total Price was $66.00. Accordingly, Caviar was entitled to ▇ ▇. Instead, Caviar withheld ▇ and remitted to Tiffin Cherry Hill only ▇ as its share of the Total Price. Likewise, in the order with ID SNJ-TIFFINCH-81390, the Total Price was $67.50, of which Caviar was entitled to ▇ ▇. Instead, Caviar withheld ▇ and Tiffin Cherry Hill received only ▇. In both instances, Caviar purposely declined to include the figure for Tiffin Cherry Hill's portion of the Total Price, instead reporting only the total amount passed on to it (i.e., its portion of the Total Price plus sales tax collected).

30. Summing the 18 Caviar orders placed to Tiffin Cherry Hill between November 1, 2019 and November 15, 2019, the Total Price was $887.75, of which Caviar withheld ▇ as ▇ and paid ▇ to Tiffin Cherry Hill. This constituted a substantial

overcharge by Caviar, as it was entitled to only ▮▮▮▮▮▮▮▮▮▮.

31. Under the Delivery Service Agreement between Tiffin Cherry Hill and Caviar, Caviar is entitled to ▮▮▮▮▮▮▮▮▮▮. Instead, for the orders placed to Tiffin Cherry Hill between November 1, 2019 and November 15, 2019, Caviar wrongfully withheld ▮▮▮ of the Total Price.

32. Evidence of Caviar's misconduct appears in order reports for other Restaurants. For example, Caviar's over-withholding can be seen in two orders placed to Tiffin Mount Airy on November 1, 2019, as shown below in a screenshot from Tiffin Mount Airy's dashboard on Caviar's website:



As with the prior examples, for the order with ID GP-WIFFINMA-33912, which had a Total Price of $55.75, Caviar withheld ▮▮▮ when it was only entitled to withhold ▮▮▮ and paid Tiffin Mount Airy ▮▮▮ plus sales tax, when it should have been paid ▮▮▮. Likewise, for the order with ID GP-WIFFINMA-57208, which had a Total Price of $22.50, Caviar withheld ▮▮▮ when it was only entitled to withhold ▮▮▮ and paid Tiffin Mount Airy ▮▮▮ plus sales tax, when it should have been paid ▮▮▮. Here again, Caviar omitted the figure for Tiffin Mount Airy's portion of the Total Price, instead reporting only the

total amount passed on to it (*i.e.,* its portion of the Total Price plus sales tax collected) and actively concealing that it was withholding funds to which Tiffin Mount Airy was entitled.

33. Summing the 29 Caviar delivery orders placed to Tiffin Mount Airy between November 1, 2019 and November 15, 2019, the Total Price was $1,192.75, of which Caviar withheld ▮ and paid to Tiffin Mount Airy ▮. However, Caviar was only entitled to ▮ and should have remitted ▮ to Tiffin Mount Airy.

34. Under the Delivery Service Agreement between Tiffin Mount Airy and Caviar, ▮. Instead, for the orders placed to Tiffin Mount Airy between November 1, 2019 and November 15, 2019, Caviar wrongfully withheld ▮ of the Total Price.

35. Based on all of the above examples, it appears that Caviar may be calculating ▮ of the Total Price, *plus* ▮ of the sales tax collected, and withholding that amount from the funds passed on to the Restaurants. This is not permitted by the Delivery Service Agreement and constitutes a breach of contract, conversion, and violation of the UCL.

36. Upon information and belief, Caviar regularly withholds funds from Restaurants at rates in excess of the ▮.

## CLASS ACTION ALLEGATIONS

37. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring their claims against Caviar for breach of contract, violations of the California Unfair Competition Law, and unjust enrichment on behalf of themselves and the following Class defined as follows:

> All sellers of food and beverage in the United States who entered into a Delivery Service Agreement with Caviar and whose funds were withheld by Caviar in excess of the applicable contractual rate known as the "Caviar Revenue Share."

38. Caviar, its officers and directors, as well as the Judge to whom this case is assigned, are excluded from the Class.

39. The Class consists of thousands of entities, making joinder impractical, in satisfaction of Federal Rule of Civil Procedure 23(a)(1). The exact size of the Class and the

identities of the individual members thereof are ascertainable through Caviar's records.

40. The claims of Plaintiffs are typical of the claims of the other Class members. Plaintiffs' claims and those of the Class members are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and the Class members.

41. The respective Class has a well-defined community of interest. Caviar has acted, and failed to act, on grounds generally applicable to Plaintiffs and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

42. There are many questions of law and fact common to the claims of Plaintiffs and of the other Class members, and those questions predominate over any questions that may affect only individual Class members. Common questions of fact and law affecting members of the Class that predominate over any individualized questions include, but are not limited to, the following:

    a) Whether Caviar breached its contracts with Plaintiffs and the other Class members by withholding funds in excess of the ▮▮▮▮▮▮▮▮▮▮▮▮▮;

    b) Whether Caviar engaged in unconscionable, unfair, deceptive, unlawful and/or fraudulent acts or practices when it withheld Restaurants' funds in excess of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

    c) Whether Caviar engaged in unconscionable, unfair, deceptive, unlawful and/or fraudulent acts or practices when it failed to identify that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on the payout report did not match the methodology set forth in Restaurants' contracts;

    d) Whether Caviar engaged in unconscionable, unfair, deceptive, unlawful and/or fraudulent acts or practices when it failed to disclose, in either its contracts or its reports to Restaurants, the basis upon which it calculated ▮▮▮▮▮▮▮▮▮▮▮;

    e) Whether Caviar engaged in unconscionable, unfair, deceptive, unlawful and/or fraudulent acts or practices when it actively concealed the basis upon which it calculated

;

f) Whether Caviar engaged in unconscionable, unfair, deceptive, unlawful and/or fraudulent acts or practices by failing to investigate and discover the overcharges made to Restaurants using its services;

g) Whether Caviar's conduct renders it liable for breach of contract, conversion, and violations of the UCL;

h) Whether, as a result of Caviar's conduct, Plaintiffs and the other Class members have been injured, and, if so, the appropriate measure of damages to which they are entitled; and

i) Whether, as a result of Caviar's conduct, Plaintiffs and the other Class members are entitled to injunctive, equitable and/or other relief, and, if so, the nature of such relief.

43. Absent the certification of a class, members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

44. Class certification, therefore, is appropriate under Federal Rules of Civil Procedure 23(a) and (b)(3). The aforementioned common questions of law and fact predominate over any questions affecting individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

45. Class certification is also appropriate pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2), because Caviar has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

46. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex

commercial litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other Class members.

## LEGAL COUNTS

### COUNT I
### BREACH OF CONTRACT

47. Plaintiffs hereby repeat and reallege each and every factual allegation set forth above as if fully set forth herein.

48. Plaintiffs and other Class members entered into Delivery Service Agreements with Caviar ███████████████████████████████ to increase business at their respective Restaurants. In exchange, Plaintiffs and the other Class members agreed to allow Caviar █████████████, calculated as ████████████████████ ███████████████ with the percentage being specified in the contract. Plaintiffs and other Class members did not agree to allow Caviar to retain any other funds, █████ ████████████████████████████.

49. Plaintiffs and the other Class members substantially performed their obligations under their contracts with Caviar.

50. Caviar breached its agreements with Plaintiffs and with the other Class members by retaining amounts ████████████████████████████████ ████████████████. Caviar's breach is material.

51. Indeed, it is a breach of contract for Caviar to retain any amount other than the agreed-upon ██████████████████████████████████.

52. Plaintiffs and the other Class members have been injured as a direct and proximate result of Caviar's breach of their agreements. Indeed, as a result of Caviar's wrongful conduct as described herein, Plaintiffs and the other Class members and suffered lost profits since at least 2014, if not earlier.

## COUNT II
## CONVERSION

53. Plaintiffs hereby repeat and reallege each and every factual allegation set forth above as if fully set forth herein.

54. Caviar receives money from customers for the orders they place to Restaurants. Caviar ▮▮▮▮▮▮▮▮▮▮ and pays to Restaurants the remainder. Caviar controls and possesses the money paid by customers for their food orders until it transfers such funds to Restaurants.

55. Caviar unilaterally calculates the share it withholds from the Restaurants.

56. Caviar's agreements ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

57. Caviar has withheld funds from Plaintiffs and other Class members in excess of the percentage of each order it is entitled to retain under the parties' agreements.

58. Plaintiffs and other Class members have the right to all funds withheld by Caviar in excess of the percentages agreed upon in their contracts.

59. By withholding funds in excess of the rates agreed upon in contracts, Caviar has engaged in the unauthorized and wrongful assumption of control, dominion, and/or ownership over the proceeds that belong to Plaintiffs and the other Class members and, as such, has converted those proceeds.

60. Plaintiffs and the other Class members have been injured as a direct and proximate result of Caviar's wrongful assumption of ownership of funds that belong to Plaintiff and the other Class members by withholding such funds in excess of the rates agreed upon in the contracts. Caviar's withholding of any such funds was unauthorized. As a result of Caviar's wrongful conduct as described herein, Plaintiffs and the other Class members have suffered lost profits since at least 2014, if not earlier.

## COUNT III
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
## CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

61. Plaintiffs hereby repeat and reallege each and every factual allegation set forth

above as if fully set forth herein.

62. The California Unfair Competition Law broadly prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

63. Here, Caviar engaged in unlawful, unfair, and/or fraudulent business acts and practices ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and failing to inform Restaurants the rate at which Caviar actually charges them.

64. Caviar further engaged in unlawful, unfair, and/or fraudulent business acts and practices by concealing from Restaurants the amounts it withheld from them as Revenue Share and the basis on which such amounts were calculated.

65. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the impact on the alleged victims.

66. A business act or practice is "unfair" under the UCL if the conduct at issue violates the policy or spirit of antitrust laws or otherwise significantly threatens or harms competition.

67. Caviar's business acts and practices are fraudulent and show a pattern of untruthful statements, false representations, concealment, and intent to mislead that were all part of a scheme to mislead.

68. These acts and practices have deceived Plaintiffs and Class members, which believed they were paying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and are likely to deceive the public.

69. Plaintiffs relied on Caviar's feigned compliance with ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ and its reporting of the same.

70. Caviar misrepresented the material fact that it was in compliance ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in its reporting to Plaintiffs.

71. Caviar's withholding of funds to which Plaintiffs are entitled and deceptive communications and reports regarding the same constitute unlawful business practices.

72. Caviar's business acts and practices here are unfair within the meaning of the UCL because Caviar charged Plaintiffs and Class members at rates higher than that agreed upon in their contracts. Caviar never informed Plaintiffs and Class members the actual rate at which it was charging them, which exceeded the rates agreed upon in their contracts, and, in fact, purposely misled Plaintiffs and Class members in that regard.

73. The impact on Plaintiffs and Class members resulting from these unfair acts and practices is outweighed by any conceivable reasons, justifications, or motives of Caviar for charging rates in excess of the rates agreed upon in its contracts with Restaurants.

74. Caviar's business acts and practices are also unfair because Plaintiffs and other Class members rely on Caviar for delivery services. Having started using Caviar's services, Plaintiffs and other Class members cannot stop using Caviar's services without harm to their businesses. Accordingly, by charging Plaintiffs and Class members in excess of the rates agreed upon in their contracts, Caviar's business acts and practices have effects comparable to a violation of antitrust laws.

75. By committing the acts and practices alleged above, Caviar engaged in unfair business practices within the meaning of the California UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

76. As a direct result of its unlawful, unfair, and/or fraudulent conduct described above, Caviar has been unjustly enriched. Caviar has been unjustly enriched by the receipt of ill-gotten gains from the deceptive overcharges ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ and from retention of funds to which it is not entitled.

77. Pursuant to California Business and Professions Code Section 17203, Plaintiffs and Class members seek an Order of this Court:

a) Compelling Caviar to restore to Class members any money retained or acquired by means of Caviar's unfair competition in violation of California Business and Professions Code Section 17200;

b) Declaring that Caviar has violated the provisions of California Business

and Professions Code Section 17200; and

   c) Enjoining and restraining Caviar from charging ████████████████████████████████

78. In prosecution of this action for the enforcement of important rights affecting the public interest, Plaintiffs seek to recover attorney fees under California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Honorable Court enter judgment in their favor and against Caviar by:

   a) Certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, declaring that Plaintiffs are proper Class representatives, and appointing Plaintiffs' attorneys as class counsel;

   b) Granting permanent injunctive relief to prohibit Caviar from continuing to engage in the unlawful acts, omissions, and practices described herein;

   c) Awarding Plaintiffs and the other Class members compensatory, consequential, and general damages in an amount to be determined at trial;

   d) Adjudging and declaring that the unlawful acts, omissions, and practices described herein constitute breach of contract, conversion, and violations of the California UCL;

   e) Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Caviar as a result of its unlawful acts, omissions, and practices described herein;

   f) Awarding statutory, punitive, and exemplary damages to the fullest extent permitted by law;

   g) Awarding Plaintiffs and the other Class members the costs and disbursements of this action, along with reasonable attorneys' fees and expenses, to the extent permitted by law;

   h) Awarding pre- and post-judgment interest at the maximum legal rate; and

i) Granting all such other relief as the Court deems just and proper.

Dated: January 21, 2020          Respectfully submitted,

By: /s/ James C. Shah
James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (856) 858-1770
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

*Attorney for Plaintiffs*

**Of Counsel**
Catherine Pratsinakis
Jessica L. Titler-Lingle
Timothy J. Ford
*Admission Pro Hac Vice Forthcoming*
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200
Email: cpratsinakis@dilworthlaw.com
Email: jtitler-lingle@dilworthlaw.com
Email: tford@dilworthlaw.com